NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RANDALL SULLIVAN, et al., <br><br> Plaintiff, <br><br> v. <br><br> GARY LANIGAN, et al., <br><br> Defendants. | Civil Action No. 10-3286 (SDW) <br><br><br> **OPINION** <br><br><br> December 20, 2011 |

**WIGENTON**, District Judge.

Before this Court is Defendants Gary Lanigan, George Hayman, Donald Mee, Robert LaForgia, Charles Davis, Deacon Johnson, and Iman Aly's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' Summary Judgment Motion and **DENIES** Defendants' Motion to Dismiss as **MOOT**.

I.  BACKGROUND

This matter involves Plaintiffs Randall Sullivan, Terrence Posey, Wendell Johnson, and Gerald Nuttry, and Defendants Gary Lanigan, George Hayman, Donald Mee, Robert LaForgia, T.M. Power, Cindy Sweeney, Charles Davis, Deacon Johnson, and Iman Aly. Plaintiffs assert claims based on violation of the First Amendment, the Equal Protection clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants argue that Plaintiffs'

claims are meritless because they are: (1) misplaced, (2) procedurally barred, (2) constitutionally barred, and (4) and because Plaintiffs cannot make the requisite showing to justify the imposition of punitive damages.

## II.   FACTS

### Jumah Services

Plaintiffs are all in the custody of the New Jersey Department of Corrections and are presently confined at the East Jersey State Prison ("EJSP") in Rahway, New Jersey. (*Id.*) The Plaintiffs in this action are members of the Nation of Islam ("N.O.I."). (*Id.* at ¶ 9.)[1] Prior to September 1, 2007, N.O.I. conducted its Jumah services inside EJSP.[2] After an incident, in which Plaintiffs allege N.O.I. was not involved, N.O.I. was no longer permitted to hold Jumah services at EJSP. (*Id.* at ¶ 10.) As a result, N.O.I. members had to attend Jumah services with Muslims who are part of the Sunni and Shiite sects. (*Id.*) Plaintiffs stated in their complaint that the tenets of their beliefs and religious practices are diametrically opposed to those of the Sunnis and Shiites. (*Id.*) Plaintiffs contend that Defendants' decision to consolidate the Jumah services has caused them to listen to teachings and attend services that are inconsistent with their religious beliefs or to not attend Jumah services at all. (*Id.* at ¶ 11.) Plaintiffs claim that N.O.I. beliefs are neither accepted nor tolerated by the Sunni and Shiite Muslim communities at EJSP. (*Id.* at ¶ 13.)

In early July 2008, Bro. Perry X, who was the N.O.I. coordinator at that time, spoke with then administrator T.M. Power about restoring N.O.I.'s Jumah service. (Compl. ¶ 18.) Defendant Power declined to restore the services and informed Bro. Perry X that the decision regarding consolidation of services came from the NJDOC. (*Id.*) On July 25, 2008, Bro. Perry

---

[1] N.O.I. is a religious community that was founded by Master Fard Muhammad on July 4, 1930. (Compl. ¶ 9.)
[2] Jumah service is a prayer service held on Fridays at noon for practitioners of Islam. (LaForgia Decl. Ex. E at 2.)

X sent a letter to the then NJDOC Commissioner George W. Hayman, and Director of Operations Lydell Sherrer to advise them of the consolidation of the Jumah services. (*Id.* at ¶ 19.) Bro. Perry X stated in the letter that the consolidation of the services was tantamount to banning N.O.I. from practicing its religion. (*Id.*) Bro. Perry X received a written response from E. James Dubois from the office of internal support and outreach services. (*Id.* at ¶ 20.) The letter stated, among other things, that the Islamic Chaplin was supposed to provide accommodating worship services for all Muslims, and therefore Defendant Power was correct in declining to restore the services. (*Id.*) Despite commencing efforts to restore Jumah services for N.O.I., Bro. Perry X was released from EJSP before being able to see his efforts through. Plaintiff Sullivan is currently the N.O.I. coordinator at EJSP and is seeking to restore N.O.I. Jumah services. (*Id.* ¶ 22.)

On February 19, 2010, Plaintiff Sullivan submitted an inmate remedy system form ("IRSF") to Defendant Donald Mee requesting the restoration of N.O.I. Jumah services. (*Id.* at ¶ 25.) On the same date, members of the N.O.I. community, including Plaintiffs T. Posey, W. Johnson, and G. Nuttry, also submitted IRSFs. (*Id.* at ¶ 26.) These forms were submitted to Cindy Sweeney, associate administrator of EJSP, and Robert Laforgia and Charles Davis, assistant administrators at EJSP. (*Id.*) On February 22, 2010, Plaintiff Sullivan forwarded a certified letter, with return receipt requested, to NJDOC Commissioner, Gary Lanigan. (*Id.* at ¶ 28.) On March 1, 2010, in response to their requests forms, Plaintiffs received a letter from Robert Laforgia and Iman Aly stating that the requests were being referred to the Religious Issue Committee for review and consideration. (*Id.* at ¶ 27.)

**Final Call**

N.O.I. had been permitted to maintain accounts and conduct fundraising drives. (Compl. ¶ 23.) During the fundraising drives, N.O.I. was permitted to sell the "Final Call" newspaper as well as Muslim rugs. (*Id.*) On or about January 29, 2010, Plaintiff Sullivan sought to withdraw $320.00 from N.O.I.'s account through EJSP's business office, in order to purchase Final Call newspapers to sell at a fundraising drive. (*Id.* at ¶ 24.) Plaintiff Sullivan, however, was not able to retrieve the money. (*Id.*) Plaintiffs allege that on March 14, 2010, N.O.I. members learned that the Final Call newspapers coming into EJSP via mail were being confiscated, though no notice was given to N.O.I. about the confiscation and despite the newspaper not being on a "ban list". (*Id.* at ¶ 34.)

**Grievance Procedure at EJSP**

Pursuant to the New Jersey Administrative Code § 10A:8-1.1 to 3.6, EJSP adopted Inmate Handbooks in 2005 and 2008. (Def.'s Br. 7.) The handbooks set forth the rights and privileges of inmates at EJSP. (*Id.*) The handbooks also set forth the administrative remedy procedures for EJSP inmates. (*Id.*) IRSFs must be completed and submitted by an inmate in order make a request or address any concerns and grievances. (*Id.*) After an inmate submits a form, the form is given to the appropriate staff person for a response. (*Id.*) After receiving a response, an inmate may appeal the response if he so chooses. (*Id.*) A response to the appeal will also be given. (*Id.*) Once the response is given to the inmate's appeal, the inmate's remedies have been exhausted. (*Id.*)

**Parties Positions**

Plaintiffs allege that the consolidation of their Jumah services, while other religious denominations are permitted to practice their religions without any hindrances is a violation of

Plaintiffs freedom of religion, violates the equal protection clause of New Jersey as well as 42 U.S.C. § 1983, and the RLUIPA, 42 U.S.C. § 200CC-1(a). Plaintiffs also allege that the discontinuation of the Final Call newspaper and its being classified as "unauthorized for retention" without fair notice or a penological objective violates their First Amendment right to free speech, the RLUIPA, and the fair notice requirement of the due process pursuant to N.J. S.A § 10:6-1,2 and 42 U.S.C. § 1983.[3] In response, Defendants first argue that Plaintiffs' claims should be barred by summary judgment because Plaintiffs failed to exhaust their administrative remedies pursuant to EJSP's administrative grievance procedures. Second, Defendants argue that Plaintiffs' claims regarding violations of their religious rights should be dismissed because Plaintiffs rights were not violated. Third, Defendants argue that Plaintiffs equal protection claims should be dismissed for failure to state a claim upon which relief can be granted. Fourth, Defendants argue that Plaintiffs due process claims should be barred by summary judgment. Fifth, Defendants argue that Plaintiffs claims against Defendants in their individual capacities are barred under qualified immunity. Sixth, Defendants argue that Plaintiffs claims against Defendants in their official capacities are barred by Eleventh Amendment immunity and should be dismissed because Defendants in their official capacities are not "persons" amenable to suit under 42 U.S.C. § 1983. Seventh, Defendants argue that they are entitled to sovereign and qualified immunity with respect to Plaintiffs' claims based on the New Jersey Civil Rights Act ("NJCRA"). Last, Defendants argue that Plaintiffs claims for punitive damages should be dismissed because Plaintiffs cannot make the requisite showing to warrant such relief.

        This Court will first discuss whether Plaintiffs' claims are procedurally barred as this is a threshold issue.

---

[3] These claims only pertain to Defendants Donald Wee, Cindy Sweeny, Robert LaForgia, Charles Davis, Deacon Johnson, and Iman Aly.

**III.     LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## IV. DISCUSSION

### a. *Exhaustion of Administrative Remedies*

The Prisoners Litigation Reform Act ("PLRA") requires as a prerequisite that prisoners who file claims regarding prison conditions, including claims pursuant to 42 U.S.C. § 1983, exhaust all available administrative remedies before seeking redress in court. *See* 42 U.S.C. § 1997e(a) (2011). Specifically, the PLRA states that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The exhaustion requirement extends to persons who are incarcerated at the time they filed their original complaint, even if they are currently no longer incarcerated. *See Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002). Under the PLRA, prisoners must "exhaust all 'available' remedies, not just those that meet federal standards." *Woodford v. Ngo*, 126 S.C.t 2378, 2382 (2006). An administrative remedy "need not be formally adopted through regulations by an agency in order for it to be considered an 'administrative remedy' within the scope of § 1997e(a)'s exhaustion requirement." *Concepcion v. Morton*, 306 F.3d 1347, 1355 (3d Cir. 2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [.]" *Woodford*, 126 S.Ct. at 2386. Therefore, a prisoner should pursue a grievance through each level of appeal available within the prison system. *See Nyhuis v. Reno, 204 F.3d 65* (3d Cir. 2000) (holding that inmates must follow the procedural requirements of the prison grievance systems). Furthermore, § 1997e(a) requires exhaustion of an administrative remedy even in instances where a remedy cannot provide the relief sought by a prisoner. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Here, Plaintiffs were incarcerated when they filed their complaint; therefore they are subject to the exhaustion requirement set forth in the PLRA. *See Ahmed*, 297 F.3d at 210. As such, Plaintiffs were obligated to exhaust all available administrative remedies outlined in the Inmate Handbooks of 2005 and 2008 before seeking redress in federal court. The inmate handbooks require Plaintiffs to submit an IRSF, wait for a response, and appeal the response if an undesired decision is rendered. Defendants contend that Plaintiffs never appealed the response to their IRSFs regarding the consolidation of Jumah services. Further, Defendants contend that Plaintiffs do not allege having ever submitted an IRSF regarding the confiscation of the Final Call newspaper. The complaint does not indicate that Plaintiffs appealed the response to their IRSFs and Plaintiffs have failed to oppose Defendants' motions. While, case law mandates that when determining a summary judgment motion, a court must construe the complaint in the light most favorable to the non-moving party, *Masson*, 501 U.S. at 521; the facts as pled in the complaint at issue do not lend to any favorable inferences for Plaintiffs since Plaintiffs did not comply with the PLRA. Since it appears that Plaintiffs have failed to avail themselves of the appellate administrative process at EJSP, Plaintiffs have not exhausted their administrative remedies.

Since Plaintiffs' claims are barred due to failure to comply with the PLRA, this Court need not address the parties' remaining arguments.

**CONCLUSION**

For the reasons set forth above, Defendants' summary judgment motion is granted.

__s/Susan D. Wigenton, U.S.D.J.__

Orig:  Clerk
Cc:    Madeline Cox Arleo, U.S.M.J.
        Parties